FILED
2017 Jul-28  PM 04:23
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | | |
|---|---|---|
| **MYRTIS BOSTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | |
| **THE PRUDENTIAL** | ) | _____ |
| **INSURANCE COMPANY OF** | ) | |
| **AMERICA; GRAHAM** | ) | |
| **HOLDINGS COMPANY; and** | ) | |
| **GRAHAM HOLDINGS** | ) | |
| **COMPANY LONG TERM** | ) | |
| **DISABILITY PLAN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff Myrtis Boston ("Plaintiff") brings this action for violations

of the Employee Retirement Income Security Act of 1974 against The

Prudential Insurance Company of America, Graham Holdings Company

and Graham Holdings Company Long Term Disability Plan (collectively,

"Defendants") in connection with the provision of ERISA-governed

disability benefits under a group insurance plan sponsored by Plaintiff's

former employer.  In support of the relief requested herein, Plaintiff

alleges the following upon personal knowledge as to herself and as to all other matters upon information and belief based upon, *inter alia*, the investigation made by and through her attorneys:

## INTRODUCTORY STATEMENT

1.     This is an action for legal and equitable relief seeking redress of violations of the Employee Retirement Income Security Act (hereinafter referred to as "ERISA").  This suit is brought pursuant to 29 U.S.C. § 1132(a), to secure disability benefits due to Plaintiff through the Graham Holdings Company Long Term Disability Plan (the "Plan"), a welfare benefits plan sponsored by Graham Holdings Company and administered by Prudential Insurance Company of America ("Prudential").

2.     The Plaintiff seeks any and all benefits to which she may be entitled should this Court determine she is "disabled," including long-term disability benefits; waiver of premium benefits under disability, life, accidental death and dismemberment or accident policies issued or administered by Prudential or which are available under the Plan; and any other benefits available through The Plan, including those managed, administered or underwritten by Prudential.

3.    Plaintiff seeks benefits based on the conditions documented in her medical records.  These conditions include, among other things, fibromyalgia, arthritis, chronic pain, and chronic fatigue.  She also suffers from TIA, diabetes, hypothyroidism, hypertension, cardiomegaly, and anemia.    Plaintiff's physical limitations include significant difficulties with memory and concentration, stamina due to pain and related issues, impairments in her hands and fingers due to advancing arthritis, and decreased sensation in her thumbs and certain fingers.

## JURISDICTION

4.    Jurisdiction is appropriate under 28 U.S.C. § 1331 in that 29 U.S.C. §1132(e) confers jurisdiction upon the district courts of the United States where, as here, Plaintiff's claims relate to an "employee welfare benefit plan" and/or an "employee pension plan" as those terms are defined within 29 U.S.C. § 1001, et. seq.  The Plan "may be found" within this District.

5.    Jurisdiction is further appropriate under 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and diversity of citizenship exists between the parties.

3

## PARTIES

6.    As of the filing of this Complaint, Plaintiff Myrtis Boston is a resident citizen of Mississippi.  At all relevant times, Plaintiff further was a participant in the Plan and thus entitled to benefits available thereunder.

7.    Defendant Prudential is a foreign corporation that does business by agent or otherwise in all counties in Alabama.

8.    Prudential is a "fiduciary" of The Plan as that term is defined by 29 U.S.C. § 1002(21).

9.    One of Prudential's designated agents for service of process is:

**CT Corporation System
2 North Jackson St., Suite 605
Montgomery, AL 36104**

10.    Prudential is an entity exercising authority or control respecting the management or disposition of The Plan assets or the personnel exercising said authority over The Plan assets.

11.    Prudential is an entity providing services to The Plan at issue.

12.    Prudential is an entity meeting ERISA's definition of a "party in interest" in this case as that term is defined by 29 U.S.C. § 1002(14).

13.   Defendant Graham Holdings Company is a foreign corporation with its principal place of business in Arlington, Virginia. Graham Holdings Company is an entity exercising authority or control respecting the management or disposition of Plan assets or the personnel exercising said authority over Plan assets and is an entity providing services to the Plan.

14.   Graham Holdings Company, as the named administrator for the Plan identified herein, is a "fiduciary" of The Plan as that term is defined by 29 U.S.C. § 1002(21) and is a "party in interest" within the meaning of 29 U.S.C. § 1002(14), and may be served with process by serving:

**Graham Holdings Company**
**c/o Plan Administrator**
**1300 North 17th Street, Suite 1700**
**Arlington, VA 22209**

15.   Defendant Graham Holdings Company Long Term Disability Plan ("The Plan") is an "employee welfare benefit plan" as defined within 29 U.S.C. § 1001, et. seq., and may be served with process by serving:

**Graham Holdings Company**
**c/o Plan Administrator**
**1300 North 17th Street, Suite 1700**
**Arlington, VA 22209**

5

## THE PLAN

16.    Upon information and belief based on an assertion Prudential made in its final decision letter of February 15, 2017 to Plaintiff, The Plan at issue was funded, at least in part, by a group insurance policy (Group Policy No. 39922) sold by Prudential, the company which also underwrote the policy.

17.    In alternative to the foregoing, based on a letter to Plaintiff's counsel dated July 17, 2017 (which is contrary to Prudential's letter above), the Plan is a self-funded Plan where Graham Holdings Company is responsible for the payment of benefits and Prudential serves in an administrative capacity only.

18.    Whatever its funding arrangement, this Plain was established by Plaintiff's employer for the purpose of conferring a benefit upon Plaintiff and other employees.

19.    As a result, this Plan, or the policy funding it, qualifies as an employee welfare benefit plan as defined in 29 U.S.C. § 1002(1), and Plaintiff qualifies as a participant and/or beneficiary under The Plan as that term is used in 29 U.S.C. § 1132.

20.   Under the terms of The Plan providing for disability benefits, Plaintiff is "disabled" as defined by The Plan.

## DEFENDANTS' LIABILITY

21.   Prior to her disability, Plaintiff Myrtis Boston worked as a Lead Customer Service Representative for Cable One, Inc., a company whose employees were participants in the Plan at all relevant times.

22.   Ms. Boston's occupation was considered a "light" occupation in terms of physical demand, where it required her to be able to lift up to 10 pounds frequently and 20 pounds occasionally, and walk or stand frequently.

23.   Being managerial in nature, this job also required her to be able to maintain focus and concentration when dealing with customers and also with the employees she supervised.

24.   Ms. Boston's position also involved being able to use her hands and fingers for keyboarding and similar tasks.

25.   On or about August 26, 2013, Ms. Boston applied for Plan disability benefits after being significantly impacted by TIAs, something for which she had been recently hospitalized.

26. These TIAs caused her to suffer short-term memory loss, impaired concentration and decreased cognitive functioning, as well as fatigue.

27. Ms. Boston's last day of work was on or about June 11, 2013.

28. In a letter dated December 2, 2013, Prudential denied Ms. Boston's claim. Prudential indicated it did not believe Ms. Boston to be disabled because it doubted the severity of her symptoms and therefore did not believe her to be limited from continuing to work as a Lead Customer Service Representative.

29. Ms. Boston appealed the closure of her claim on her own (without the assistance of counsel) in a letter dated February 12, 2014. She explained her ongoing issues in detail and asked Prudential to overturn its closure of her claim and begin honoring it.

30. In a letter dated July 18, 2014, a Prudential appeals team determined that Ms. Boston met the Plan definition of disability and was therefore entitled to payment of her benefit going back to September 10, 2013.

31. The claim record reveals this determination to be based on the July 14, 2014 "peer review" report by Dr. Jerome Siegel, M.D., for

8

University Disability Consortium ("UDC"), a Prudential medical-review vendor.

32.   Dr. Siegel found support for numerous restrictions and limitations, including as to Ms. Boston's left and right hands where he assessed her as being capable of "handling/fingering occasionally," something that presents a significant problem with all desk jobs because it rules out jobs that require even modest amounts of typing (such as any job involving any degree of data entry).

33.   Prudential also instructed Ms. Boston in that same July 18, 2014 letter to apply for Social Security disability benefits (which she had already done).

34.   On September 26, 2014, the Social Security Administration administrative law judge found Ms. Boston to be unable to perform any gainful activity not just where she lived, but in the *national* economy, and therefore disabled under SSA rules and entitled to Social Security disability benefits.

35.   Once informed of the determination, Prudential announced to Ms. Boston that it was entitled to collection of her SSDI award to

compensate it for "overpayment" of past benefits out of her Social Security back-pay award.

36. Ms. Boston did as asked and tendered the payment Prudential requested almost immediately to satisfy Prudential's claim of indebtedness.

37. Thereafter, Prudential also began taking an "offset" from that point forward, which worked to decrease Ms. Boston's disability benefit significantly.

38. Nearly one year later, Prudential's claims team assigned at that time to Ms. Boston's benefit commissioned a new review which led to Prudential's issuance of its letter dated September 10, 2015 terminating her claim.

39. Prudential's reasoning expressed in this letter, however, directly contradicted the earlier approval of the claim and in particular the findings by its own vendor, Dr. Siegal, who found Ms. Boston unable to continue work even in a sedentary occupation.

40. Ms. Boston's records showed no substantial medical improvement in her conditions, including in her musculoskeletal issues with her hands or the effects of her fibromyalgia and other problems.

41.   Moreover, Prudential did not even undertake a review as to whether any substantial medical improvement had occurred; instead, it merely rehashed Ms. Boston's unchanged medical information and just came to a *different* conclusion this time around because it did not want payment of the claim to continue.

42.   Ms. Boston thereafter appealed the termination two more times as permitted under the Plan, and in each, she noted her conditions had not changed and that she still could not work.

43.   Prudential denied the last of these appeals and made its final determination pursuant to the Plan's administrative provisions on February 15, 2017.

44.   This determination was based in substantial part upon a completely new "peer review" conducted by Dr. Robert Swotinsky who was with a new medical review vendor, MLS Group of Companies, Inc.

45.   Dr. Swotinsky's report reveals he was never asked to opine on, much less review, Dr. Siegal's conclusions or findings.   Instead, Prudential structured the review in such a way as to avoid apprising Dr. Swotinsky of the earlier conclusions.   As a result, his review was incomplete, and the termination based on that review was fatally flawed.

11

46. Prudential, and Dr. Swotinsky, also never considered Ms. Boston's disability finding by the Social Security Administration.

47. Since the final denial decision, Ms. Boston, individually and through her attorneys, have requested Plan documents from the Defendants, including specifically the group policy referenced in the denial letters. That policy has never been produced.

48. Moreover, Prudential has also since indicated that it does not maintain a set of procedures for claims administration for purposes of assuring consistent decision making (which likely is a key reason why its decisions here during the life of Ms. Boston's claim oppose one another).

49. The documents Prudential has presently identified as being Ms. Boston's claim file establish numerous breaches and errors committed by Prudential during the course of administering Plaintiff's claim, including:

    (a)    The targeting of Plaintiff's claim for denial because ERISA governs;

    (b)    The failure by Prudential to take any meaningful measures to insulate its claims process from its inherent

conflict under the Supreme Court case *Glenn v. MetLife* and instead allowing its profit motive to influence its claims administration for Plaintiff;

(c)    The withholding of relevant documents and information from Plaintiff throughout the claims process and depriving Plaintiff of the ability to obtain a full and fair review of her claim;

(d)    Taking an adversarial posture against Plaintiff instead of a fiduciary posture by searching for ways to avoid paying part or all her claim;

(e)    Failing to conduct an adequate investigation, and not considering and/or according proper weight to relevant, supportive information;

(f)    Failing to accord any weight to Plaintiff's medical providers who personally examined the Plaintiff on a regular basis;

(g)    Failing to adhere to the terms of the Plan, such as those governing the review of adverse benefit determinations;

(h)    Purposefully limiting and curtailing the review of its medical consultants and otherwise improperly exerting influence on them to opine against payment of benefits;

(i)    Unreasonably and arbitrarily overruling the professionals who personally examined Plaintiff or allowing any of them the opportunity to "peer review" Prudential's medical consultant (essentially conducting a one-way medical review process);

(j)    Failing to give Plaintiff's claim a full co-morbid review and give any consideration to how her conditions impacted one another; and

(k)    Unreasonably and arbitrarily overruling *its own* prior determinations that Plaintiff was permanently disabled without there being medical evidence of substantial medical improvement in Plaintiff's conditions.

50.    Despite Plaintiff's established disability and entitlement to coverage under the terms of the Plan, Prudential determined that Plaintiff was not "disabled" and that she no longer qualified for benefits.

14

51.   As set forth above in connection with Prudential's fiduciary breaches, Prudential's claim decision was the product of a conflict of interest whereby it allowed its own financial interests to supersede its fiduciary obligations to Plaintiff.   Under *Glenn*, this presents an additional reason for application of a *de novo* standard to their claims decision.

52.   This conflict of interest further calls into question the credibility of Prudential's claims personnel and reviewers.

53.   Prudential considered the applicability of ERISA before making its decision.  This presents an additional reason for application of a *de novo* standard to their claim decision, and to excuse the Plaintiff from further utilization of Prudential's claim process.

54.   Prudential did not provide Plaintiff with a meaningful opportunity for a full and fair review of her claim for benefits as required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1.

55.   Prudential's decision process has not comported with 29 U.S.C. § 1133's requirement that any notice of the denial must contain the specific reasons for such denial, written in a manner calculated to be

understood by the participant, and must comport with Department of Labor regulations.

56.   Plaintiff has exhausted all Plan remedies.  As such, this case is ripe for judicial review.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Myrtis Boston respectfully requests this Court find jurisdiction and venue appropriate, and after trial, grant her the following relief:

a.   Award Plaintiff past benefits due and payable under the terms of the employee welfare benefit plan/insurance policy(ies) and/or pension plan pursuant to 29 U.S.C. § 1132(a);

b.   Enter a declaratory judgment as to Plaintiff's entitlement to future benefits and an appropriate order directing the Defendants to pay all similar claims of Plaintiff in the future pursuant to 29 U.S.C. § 1132(a);

c.   Should the Defendants voluntarily pay all past due benefits, enter a declaratory judgment as to Plaintiff's entitlement to future benefits, along with entering an appropriate order directing the Defendant to pay similar claims to Plaintiff in the future, or in the

16

alternative, for the Court to remove Prudential from its fiduciary role in the administration of The Plan(s), and to appoint a special master at Prudential's expense to substitute for this Defendant with the special master having the authority to make all determinations as to Plaintiff's entitlement to future benefits;

d.     For a judgment against the Defendants awarding Plaintiff prejudgment interest, costs and expenses, including the reasonable attorney's fee as permitted under 29 U.S.C. § 1132(g)(1);

e.     For an order enjoining the Defendants from further breaches of fiduciary or co-fiduciary duties, and direct that Defendants exercise reasonable care, skill, prudence, and diligence in the administration of Plaintiff's claim;

f.     For an order pursuant to 29 U.S.C. § 1132(c) awarding Plaintiff $110 for each day beyond the Defendants' due-date for responding to Plaintiff's ERISA production request;

g.     For an order requiring Defendants to provide Plaintiff with any additional benefits to which the Plaintiff would be entitled pursuant to a finding that the Plaintiff is disabled under The Plan(s), including

waiver of premium benefits under other policies/Plans that Defendants have administered; and

h.    Such other relief as may be deemed just and proper.

Respectfully submitted,

M. Clayborn Williams
(ASB-9101-A43M)


Ariel S. Blocker
(ASB-0090-Z82A)

**The Martin Law Group, LLC
Attorneys for Plaintiff**
P.O. Box 20087
Tuscaloosa, AL 35402-0087
Phone (205) 343-1771
Facsimile (205) 343-1781
clay@erisacase.com

**Plaintiff's Address:**

Myrtis Boston
c/o The Martin Law Group, LLC
P.O. Box 20087
Tuscaloosa, AL 35402

**Defendants' Address:**
The Prudential Insurance Company of America
751 Broad Street
Newark, NJ 07102-3777

waiver of premium benefits under other policies/Plans that Defendants have administered; and

     h.    Such other relief as may be deemed just and proper.

                                 Respectfully submitted,

M. Clayborn Williams
(ASB-9101-A43M)

Ariel S. Blocker
(ASB-0090-Z82A)

**The Martin Law Group, LLC**
**Attorneys for Plaintiff**
P.O. Box 20087
Tuscaloosa, AL 35402-0087
Phone (205) 343-1771
Facsimile (205) 343-1781
clay@erisacase.com

**<u>Plaintiff's Address:</u>**

Myrtis Boston
c/o The Martin Law Group, LLC
P.O. Box 20087
Tuscaloosa, AL 35402

**<u>Defendants' Address:</u>**
The Prudential Insurance Company of America
751 Broad Street
Newark, NJ 07102-3777

18

Graham Holdings Company, as Plan Administrator
1300 North 17th Street, Suite 1700
Arlington, VA 22209

Graham Holdings Company Long Term Disability Plan
c/o Plan Administrator
1300 North 17th Street, Suite 1700
Arlington, VA 22209